IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 17-cv-03164-MSK-KMT

CARLOS WOODS,

       Petitioner,

v.

JACK FOX, Warden,

       Respondent.

OPINION AND ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS

**THIS MATTER** comes before the Court on Carlos Woods' *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 **(#13)**. The named Respondent is Warden Jack Fox, but because this petition is brought against him in his official capacity as Warden of the United States Penitentiary, Administrative Maximum, in Florence, Colorado, the Court will refer to the Respondent as the Bureau of Prisons ("BOP"). The BOP's Response is found at **(#24)**. Mr. Woods' Traverse is at **(#25)**.

Also before the Court are Mr. Woods' Motion Requesting *Pro Bono* Representation **(#22)** and Motion for Discovery **(#23)**, to neither of which has the BOP filed a response.

**I.**     **Jurisdiction**

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2241 and 1331.

## II. Summary of Relevant Material Facts

Mr. Woods is currently in the custody of the United States Bureau of Prisons ("BOP") at the United States Penitentiary ("USP"), Administrative Maximum, in Florence, Colorado. However, his petition arises out of disciplinary proceedings brought against him following an altercation involving Mr. Woods while he was housed at the USP in Pollock, Louisiana.

The altercation occurred in the common area of the A3 Housing Unit at USP Pollock. In brief summary, on February 28, 2016, Mr. Woods and other USP Pollock inmates played a role in an assault on another inmate, in the course of which the other inmate and Officer Dustin Cain were stabbed with one or more inmate-made weapons. Mr. Woods was initially charged with the prohibited acts of assault on staff and fighting.[1]

Because the charges could have resulted in criminal prosecution, the investigative procedures customarily used at USP Pollock were not employed. Notably, Officer Cain prepared no report of the altercation. Instead, a Special Investigative Services ("SIS") investigator interviewed Officer Cain and recorded notes of what Officer Cain said. In summary, these notes reflect that Officer Cain observed one inmate assaulting another, and that he intervened. While he attempted to restrain the first inmate, four other inmates, including Mr. Woods, entered the housing unit and piled onto both Officer Cain and the inmate he was restraining with the apparent intent of assaulting the inmate being restrained, thereby sandwiching Officer Cain between them. Both Officer Cain and the inmate beneath him were stabbed with one or more inmate-made weapons during the ensuing melee. "[B]eliev[ing]" that Mr. Woods had stabbed

---

[1] As will be discussed below, the charges against Woods were subsequently amended to assault causing serious bodily injury and possession of a weapon.

him, Officer Cain ordered him to drop "his weapon" and lie down on the ground. When Mr. Woods failed to comply, Officer Cain forced Mr. Woods to the ground and recovered "a weapon off of him." Officer Cain suffered multiple stab wounds to his hand and forearm, and avoided more serious injury only because he was wearing a stab-resistant vest. Mr. Woods also received injuries to his face and head.

The altercation was recorded on the prison's VICONET video system. An SIS investigator viewed and summarized the video record and prepared an incident report (the "original incident report") based primarily on that summary and on the notes recorded from Officer Cain's interview. The original incident report charged Mr. Woods with the prohibited acts of "Assault on Staff" and "Fighting."

SIS referred the matter to the FBI, which elected not to bring criminal charges. The original incident report was then submitted to the Unit Disciplinary Committee ("UDC") with a copy provided to Mr. Woods. The UDC determined that disciplinary proceedings were warranted, and Mr. Woods requested both that the VICONET video record of the altercation be reviewed and that certain inmate witnesses[2] be called to testify at his disciplinary hearing. The UDC referred the matter to a Discipline Hearing Officer ("DHO").

The DHO directed SIS to rewrite the incident report to include a more detailed description of "the weapon" allegedly recovered from Mr. Woods. In response, a third SIS investigator reviewed the VICONET video record and rewrote the incident report as directed by

---

[2] Specifically, Mr. Woods requested that inmate Willie Mitchell – the inmate assaulted by the inmate Officer Cain was restraining when the altercation occurred – and all of the inmates housed in the A3 Housing Unit be called.

the DHO (the "revised incident report").³ The revised incident report charged Mr. Woods with the prohibited acts of "Assaulting Any Person, Serious Bodily Injury" and "Possession of a Weapon." The revised incident report was submitted to the UDC with a copy provided to Mr. Woods.

The UDC once again referred the charges to the DHO. Mr. Woods requested that he be assisted by a staff representative at the DHO hearing and iterated his previous requests that the video record be viewed and that Willie Mitchell and all inmates housed in the A3 Housing Unit be called as witnesses.

Mr. Woods' disciplinary hearing occurred on July 20, 2016. Mr. Woods' case manager appeared at the hearing as Mr. Woods' staff representative. Mr. Woods stated that he had no documentary evidence to present, and once again requested that the video record be produced and reviewed and that his selected inmate witnesses be called. The DHO did not review the video record or produce it at the hearing, and did not address Mr. Woods' request that it be reviewed either at the hearing or in his subsequent report.

There is a factual dispute as to whether Mr. Woods waived his right to have witnesses testify at the hearing. He asserts that he did not, but the DHO states that he advised Mr. Woods that potential witness Willie Mitchell had been transferred to another institution and was unavailable to appear, and that he gave Mr. Woods the option of either waiving his right to call

---

³ The revised report is generally consistent with the original, differing from it only insofar as it states that Mr. Woods can be observed in the video record "striking inmate Shaw and [Mr. Cain] numerous times with an overhead stabbing motion to their upper torso areas and hands" and describes the weapon "recovered from" Mr. Woods as "a piece of metal, measuring approximately 10 inches, sharpened to a point on one end with a piece of cloth on the other end for a handle."

Mr. Mitchell or deferring the hearing to obtain Mr. Mitchell's written statement. The DHO further testifies that when presented with those options, Mr. Woods declined to postpone the hearing and instead waived his right to call Mr. Mitchell. As to the A3 Housing Unit inmates, the DHO testifies that he offered Mr. Woods the opportunity to call at most two of those inmates, whereupon Mr. Woods orally waived his right to call any witnesses, but refused to sign a document so stating. The DHO signed a statement that Mr. Woods had waived his right to call any witnesses, which was witnessed by Mr. Woods' case manager.

As discussed above, it is undisputed that Mr. Woods was never permitted to review the VICONET video record of the altercation, and that at the hearing the DHO did not consider it. It is also undisputed that Mr. Woods called no witnesses on his behalf. The only evidence pertinent to the charges at issue that the DHO considered at the hearing were the incident reports prepared by SIS investigators on the basis of those investigators' summaries of the video record and another investigator's notes of his interview of Officer Cain, and Mr. Woods' oral testimony that he "didn't do it" and "didn't have a knife." The DHO determined on the basis of that evidence that Mr. Woods assaulted a person and possessed a weapon. After making that determination, the DHO prepared a report (the "DHO report") stating the grounds for his decision and the evidence upon which he relied **(#24-4)**, a copy of which he provided to Mr. Woods.

The USP Pollock disciplinary board sanctioned Mr. Woods with the loss of 41 days of good conduct time, forfeiture of 41 days of non-vested good time, 30 days disciplinary segregation, and a period of lost commissary, email, and visiting privileges.

Through the petition now before the court, Mr. Woods contends that his due process rights were violated in that (i) his staff representative failed to provide him with adequate

5

assistance in connection with the disciplinary hearing, (ii) there was unusual delay in Mr. Woods' receipt of the original incident report and the original report was modified after having been provided to Mr. Woods, (iii) the DHO was not impartial, and (iv) Mr. Woods was not permitted to present the video record or to present the witness testimony he requested. Mr. Woods seeks an order expunging the incident report, placing him back into the general prison population, restoring his good conduct time credits, and directing an investigation of the discipline he received.

## III.  Standard of Review

### A.  Review of Inmate Disciplinary Proceedings

Federal prisoners enjoy a constitutionally-protected liberty interest in their earned good conduct time credits. *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). In consequence, prison officials may not revoke federal prisoners' earned good conduct time credits without providing the "minimal" safeguards required under the Due Process Clause of the Fourteenth Amendment. *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007), *quoting Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996), *quoting Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991). However, because inmate disciplinary proceedings are not criminal prosecutions, the "full panoply" of due process rights owed to criminal defendants under the Fourteenth Amendment is inapplicable to federal prisoners subject to discipline for infraction of institutional rules. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather, constitutionally adequate due process in connection with inmate disciplinary proceedings requires that the inmate receive (i) not less than 24 hours advance written notice of the disciplinary hearing at which the propriety of sanctions will be determined, (ii) the opportunity to call witnesses and to present documentary evidence at the hearing (to the extent consistent with

6

the prison's interest in institutional safety), and (iii) a written statement by the finder of fact of the grounds for the ultimate disciplinary decision and of the evidence underlying that decision. *See id.* at 564, 566. In the Tenth Circuit, an impartial decisionmaker in a prison disciplinary proceeding is so fundamental a requirement of due process that it is also constitutionally mandated. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004).

At least "some evidence" must support the prison disciplinary board's ultimate decision to revoke a prisoner's good conduct time credits. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). When determining whether a prison disciplinary board's decision is founded on at least some evidence, courts are not required to examine the entire record of the disciplinary proceedings, to assess the credibility of witnesses, or to weigh the evidence presented to the board. *See id.* at 455-456; *see also Mitchell*, 80 F.3d at 1445. Rather, a court's task is limited to determining whether *any* evidence in the record could support the board's decision. *See Hill*, 472 U.S. at 455-456.

**B.**     *Pro Se* **Litigants**

In considering Mr. Woods' filings, the Court is mindful of his *pro se* status and accordingly reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). However, such liberal construction extends only to technical formatting errors and defects in his use of legal terminology or proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Woods of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these respects the Court will treat Mr. Woods according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *see also Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

7

IV.     **Analysis**

Mr. Woods' first three challenges can be addressed rather briefly.

A.      **Assistance of Staff Representative**

Mr. Woods complains that his representative met with him for the first time on the day of the disciplinary hearing, reviewed no material evidence in advance of the hearing, and asked no questions and made no statements in the course of the hearing. However, there is no due process or other constitutional right to assistance from a staff representative or any other representative in connection with a prisoner's institutional disciplinary proceedings. *See Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). Due process only requires that prisoners be provided with a staff representative *if they are illiterate or if the disciplinary issues are so complex as to make it unlikely they will be unable to prepare a defense absent the assistance of such a representative. See Wolff*, 418 U.S. at 570. Absent a due process right to the assistance of a staff representative, there can be no due process violation premised on the inadequacy of a staff representative's assistance.

The record establishes here that Mr. Woods is literate, and that the matters at issue in the disciplinary proceeding against him were not particularly complex. In consequence, Mr. Woods had no constitutional right to staff representative assistance. *See id.* Thus, even assuming that the deficiencies identified by Mr. Woods are true, they do not rise to the level of a deprivation of a constitutional right as a matter of law.

B.      **Institutional Procedural Violations**

Mr. Woods complains that there was delay between March 7 and June 27, 2016, before the original incident report was provided to him, and that such delay violated USP Pollock policy. In addition, he complains that the revised incident report was modified after the original

report had been presented to him, including by changing the charges against him, again apparently in violation of USP Pollock policy.

Prison regulations are not designed to confer rights on prisoners, but rather to provide guidance to prison administrators in the performance of their official duties. *See Sandin v. Conner*, 515 U.S. 472, 481-482 (1995). The process due to prisoners in connection with institutional disciplinary proceedings is determined strictly by reference to the constitutional requirements not by reference to prison regulations or procedures. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539-541 (1985); *see also Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993). Generally, review of a prisoner's due process challenge to the constitutionality of institutional disciplinary proceedings is governed by whether the *Wolff* protections were provided and whether the disciplinary conclusion was supported by some evidence of record, *see Mitchell*, 80 F.3d at 1445, and whether the disciplinary decision was reached by an impartial decisionmaker, *see Gwinn*, 354 F.3d at 1220. In other words, a prison official's failure to comply with internal prison regulations governing disciplinary proceedings does not implicate the Due Process clause, except where the rights identified above are transgressed.

Mr. Woods is correct that there were two incident reports and neither of them were provided to him within 24 hours of the altercation. But such delay does not constitute a violation of his constitutional rights because the only applicable timing requirement is that a prisoner receive notice of the charges against him at least 24 hours in advance of the prisoner's disciplinary hearing. *See Wolff*, 418 U.S. at 564. Because Mr. Woods received both reports more than 24 hours in advance of his DHO hearing, including the revised incident report which stated the charges at issue in the hearing, the complained-of delay and modification did not

9

violate his constitutional rights.

### C. Right to an Impartial Tribunal

A federal prisoner facing disciplinary action for violation of institutional rules has a constitutionally protected due process right to an impartial decisionmaker. *See Gwinn*, 354 F.3d at 1220. However, because disciplinary tribunals are entitled to a presumption of honesty and integrity, a successful challenge to the impartiality of a disciplinary decisionmaker requires substantial evidence that the decisionmaker harbored actual bias against the prisoner as to the specific factual matters at issue in the disciplinary proceeding. *See id.*, quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998). A due process violation occurs only when the risk of unfairness presented by the decisionmaker's bias is "intolerably high" under all applicable circumstances. *See id.*, quoting *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986), quoting *Withrow v. Larkin*, 421 U.S. 35, 55 (1975). The impartiality requirement is satisfied where disciplinary decisionmakers have no personal involvement in the case being adjudicated, its presentation, or its investigation. *See id.*

Here, Mr. Woods argues that he was deprived of his due process rights in connection with the disciplinary hearing because the DHO was not impartial. In support of that argument, Mr. Woods asserts that the DHO was biased in that (i) he failed to consider that the original incident report had been rewritten and the charges against Mr. Woods modified prior to the disciplinary hearing, (ii) he failed to obtain statements from Officer Cain or the SIS investigator who authored the revised incident report, and (iii) he had previously been employed as a Captain at USP Pollock.

Assuming *arguendo* the truth of Mr. Woods' assertions, none of his assignments of bias is sufficient to call the DHO's impartiality into question for constitutional due process purposes.

Neither failure to consider modification of the incident report or the charges at issue, nor failure to obtain or consider all potentially probative evidence, nor previous service as a correctional officer has any tendency to suggest that the DHO had any personal involvement in the case against Mr. Woods, in its presentation, or in its investigation, or any tendency to suggest the existence of an intolerable risk of unfairness to Mr. Woods. Mr. Woods' challenge to the DHO's impartiality is therefore without merit. *See Gwinn*, 354 F.3d at 1220.

**D.     Opportunity to Offer Documentary Evidence and to Call Witnesses**

Mr. Woods' fourth challenge raises more troubling questions. It is Woods' position that he did not receive his constitutionally mandated opportunity to offer documentary evidence and to call witnesses in his defense, in that the DHO failed to review the VICONET video record of the altercation and in that the DHO purportedly improperly denied him the opportunity to call witnesses at the disciplinary hearing.

As noted above, the parameters of constitutional due process in the prison disciplinary context are described in *Wolff*, 418 U.S. at 556, 564, 566. Among the due process protections that prisoners subject to institutional disciplinary proceedings must be provided is the opportunity to present documentary evidence and to call witnesses in their defense, to the extent consistent with the prison's interest in institutional safety. *See id.* at 564. The Tenth Circuit Court of Appeals has had the opportunity to clarify that requirement's application to facts similar to, but less egregious than, the facts at issue here. *See Howard*, 487 F.3d at 810.

In *Howard*, correctional officers observed the petitioner throw a homemade weapon at another inmate, who then retrieved the weapon and used it to strike the petitioner. The petitioner was charged with attempted assault and possession of a weapon. At the disciplinary hearing, the petitioner requested that a video record of the altercation be produced and reviewed. The DHO

11

refused on the grounds that the petitioner had not proven the existence of the video record and that, if there such a video record existed, it would be needlessly cumulative to present the video in light of the testimony of the officers who observed at least part of the incident.

The Court held that the video record was documentary evidence that the inmate was entitled to present absent a showing that its production and consideration was inconsistent with institutional safety standards. Finding that the DHO had failed to identify any institutional safety concern that would justify denial of the inmate's right to the video, the Court concluded that the inmate's due process rights had been violated, and such violation was not harmless. In rejecting the BOP's argument that production of the video would have been cumulative, the *Howard* court was clear:

> The B[OP] noted that the DHO based his decision on staff reports, and argued that, because "prison staff are legally obligated to tell the truth in disciplinary proceedings," introducing "any *possible* videotape would have been needlessly cumulative." This Orwellian argument would neatly dispose of any need to allow inmates to present evidence contradicting statements of prison staff, a conclusion we are not prepared to accept. *See Ramer* [*v. Kerby*], 936 F.2d [1102,] 1104 [(10th Cir. 1991)] ("An assertion that a witness' testimony is 'merely corroborative' generally is insufficient to justify denial of an inmate's request to call witnesses when that inmate faces a credibility problem trying to disprove the charges of a prison guard." (citation omitted)). Moreover, the DHO could not possibly have known the videotape was needlessly cumulative without looking at it.

*Howard*, 487 F.3d at 814 (internal alterations omitted; emphasis original).

Here, Mr. Woods likewise requested the opportunity to review and present the video record at his disciplinary hearing. The DHO provided no reason for denying that request. In briefing, the BOP now argues, as it did in *Howard*, that presentation of the video record was unnecessary and cumulative because the DHO considered written summaries of it. This justification is patently insufficient for the reasons discussed in *Howard*.

12

The DHO's rejection of Mr. Wood's request for presentation and review of the video record is particularly serious for several reasons. First, the facts around the altercation are murky. The altercation involved multiple individuals in a physical "dogpile." Who did what and to whom is not crystal clear. More than one inmate was allegedly involved in the assault, and more than one inmate allegedly had a weapon. Whether Mr. Woods, as compared to another inmate, assaulted Officer Cain and whether he, as compared to other inmates, possessed a prohibited weapon were facts critical to his disciplinary conviction. The video record is clearly probative as to those questions of fact.

Second, unlike the situation in *Howard*, the DHO here relied upon no live or documentary evidence by any eyewitness to the altercation except that of Mr. Woods. Essentially, there was an extremely limited pool of potential material percipient evidence – inmate witness testimony, Officer Cain's testimony, and the video record. Sidestepping, for a moment, the question of whether Mr. Woods waived his right to call witnesses, it is undisputed that the only percipient evidence considered at the hearing was Mr. Woods' brief statement that he "didn't do it" and "didn't have a knife." Officer Cain did not testify, nor was any written statement prepared by him offered. Indeed, Officer Cain never prepared a report of the incident. Instead, he was orally interviewed by an SIS investigator who took notes, but Officer Cain never verified the SIS investigator's notes. The two versions of the incident report that the DHO considered were prepared by two officers who did not witness the altercation but rather merely summarized what they saw in the video and the SIS interview of Officer Cain. In consequence, only the video record was available as contemporaneous percipient evidence as to what occurred. Exclusion of the video without a security justification, in circumstances where it was the only contemporaneous evidence, clearly deprived Mr. Woods of his right to present meaningful and

potentially exculpatory evidence.

It is likewise a violation of an inmate's due process rights for a DHO to refuse to allow an inmate to call witnesses where to do so would not be inconsistent with institutional safety interests. *See Wolff*, 418 U.S. at 564. The record before the Court establishes a factual dispute as to whether Mr. Woods waived his right to call witnesses or present witness statements. It is not necessary, however, to resolve that dispute in light of the deprivation of Mr. Woods' rights with regard to the video. Because the Court will remand this matter for reconsideration at a new disciplinary hearing, Mr. Woods shall have an opportunity to renew his request for witnesses.

**E. Remedy**

Courts have broad discretion to craft judgments granting habeas corpus relief as required by law and the interests of justice. 28 U.S.C. § 2243; *see also Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012).

Here, although it is necessary to vacate the defective DHO ruling, the Court finds that the charges against Mr. Woods are serious and thus, it is appropriate to remand the matter to the BOP to conduct a new disciplinary hearing. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (courts may provide "an opportunity to correct the constitutional violation found by the court"). The BOP need not transport Mr. Woods to USP Pollock for a new hearing; it may hold such a hearing wherever it deems appropriate, subject only to its obligation to comply with the due process requirements set forth herein – that is, to give Mr. Woods sufficient notice of the charges and the hearing, to permit him to present documentary evidence (including, if requested and

appropriate, the VICONET video) and call witnesses,[4] and to provide him with a written statement of reasons for the DHO's conclusions.

V.      Conclusion

**IT IS THEREFORE ORDERED** that Mr. Woods' Petition **(#13)** is **GRANTED.** The Court **VACATES** the DHO's August 9, 2016 report and **REMANDS** the matter back to the BOP for further proceedings consistent with this Opinion.

Dated this 18th day of October, 2018.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge

---

[4] Should Mr. Woods request to call witnesses who are not physically present where the hearing is held, be it USP Pollock or elsewhere, the Court expects that the BOP will make an individualized determination as to whether to produce each witness in person, to permit Mr. Woods to present that witness' testimony via other means (*e.g.* by video, in writing), or to refuse to permit Mr. Woods to call that witness for stated reasons. *See Howard*, 487 F.3d at 813.